AO 243 (Rev. 5/85)

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

03-355

**United States District Court** District Eastern Louisiana

| Name of Movant<br>LANDOR, Damon | Prisoner No.<br>28711-034 | Case No.<br>CR-03-355 SECT.K |
| --- | --- | --- |

Place of Confinement
Federal Correctional Complex (Medium), P.O. Box 26040, Beaumont, Texas 77720-6040

UNITED STATES OF AMERICA  V.  Damon Landor
(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack United States District Court, 500 Camp Street, New Orleans, Louisiana 70130

2. Date of judgment of conviction 13 July 2004

3. Length of sentence 120 months (10 years) S.R.A.

4. Nature of offense involved (all counts) Conspiracy to possess with intent to distribute more than 500 grams but less than 2 kilograms of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(B) and 846.

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   Not Applicable

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐ (Not Applicable—Guilty Plea)
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☐ No ☒

Fee
Process
X Dktd
CtRmDep
Doc. No. 365

(2)

AO 243 (Rev. 5/85)

9. If you did appeal, answer the following:

    (a) Name of court _____ Not Applicable _____

    (b) Result _____ Not Applicable _____

    (c) Date of result _____ Not Applicable _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☒

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court _____ Not Applicable _____

       (2) Nature of proceeding _____ Not Applicable _____

                       Not Applicable _____

       (3) Grounds raised _____ Not Applicable _____

       _____

       _____

       _____

       _____

       _____

       (4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐ Not Applicable

       (5) Result _____ Not Applicable _____

       (6) Date of result _____ Not Applicable _____

    (b) As to any second petition, application or motion give the same information:

       (1) Name of court _____ Not Applicable _____

       (2) Nature of proceeding _____ Not Applicable _____

       _____

       (3) Grounds raised _____ Not Applicable _____

       _____

       _____

       _____

       _____

AO 243 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐ Not Applicable

(5) Result_____ Not Applicable _____

(6) Date of result _____ Not Applicable _____

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.       Yes ☐ No ☐ Not Applicable
(2) Second petition, etc.    Yes ☐ No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

This is the defendant's initial effort to collaterally challenge the consti-

tutionality of the instant judgment of conviction and sentence subsequent to

the date in which his conviction and sentence became final.

_____

_____

_____

_____

_____

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION. If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

   For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.
   Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.
(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: INEFFECTIVE ASSISTANCE OF COUNSEL/INVALID GUILTY PLEA

PROCEDURE.

Supporting FACTS (state *briefly* without citing cases or law) That the defendant's current 120 month sentence is unlawful in that it is the product of woefully ineffective assistance from his counsel of record; the facts of which demonstrate a violation of the defendant's constitutional right to a fair trial and due process of law, both by virtue of an intentionally bad-faith plea agreement from the government which was exacerbated by counsel's willful and intentionally erroneous advice.

(See attached Memorandum for additional arguments.)

B. Ground two: Not Applicable

Supporting FACTS (state *briefly* without citing cases or law): Not Applicable

C. Ground three: Not Applicable

Supporting FACTS (state *briefly* without citing cases or law): Not Applicable

AO 243 (Rev. 5/85)

D.  Ground four: _____ Not Applicable _____

Supporting FACTS (state *briefly* without citing cases or law): Not Applicable

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: The defendant states that his failure to raise the foregoing claim in any prior motion or action was not due to his culpable negligence but, rather, was predicated upon the woefully ineffective assistance that he received from his attorney of record which both prejudiced and obstructed him in his efforts to exercise his right to due process and/or a fair trial as is so stated herein.
          (See attached Memorandum for additional cause and prejudice.)

14.  Do you have any petition or appeal now pending in any court as to the judgment under attack?
     Yes ☐ No ☒

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

     (a) At preliminary hearing Dane S. Ciolino, Post Office Box 850848, New Orleans,
         Louisiana 70185

     (b) At arraignment and plea _____ Same as above

     (c) At trial _____ Same as above

     (d) At sentencing _____ Same as above

AO 243 (Rev. 5/85)

(e) On appeal _____ Not Applicable _____

(f) In any post-conviction proceeding _____ Not Applicable _____

(g) On appeal from any adverse ruling in a post-conviction proceeding _Not Applicable_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐ No ☑

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☑

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

Not Applicable

(b) Give date and length of the above sentence: __Not Applicable_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐   Not Applicable

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____Not Applicable_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

__12/02/04__
(date)

*Damon Landor*
Signature of Movant
Damon Landor
Defendant/Petitioner, pro se

(7)

IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

DAMON LANDOR,                              )
      Defendant/Petitioner,              )    Civil Action No._____
                             )    Crim. Action No. CR-03-355-K-1
                             )
v.                                         )
                             )
                             )    The Honorable Stanwood R. Duval, Jr.
UNITED STATES OF AMERICA,                   )    United States District Judge
      Plaintiff/Respondent.             )

M  E  M  O  R  A  N  D  U  M

OF LAW AND FACTS IN SUPPORT OF THE INSTANT MOTION TO VACATE, SET ASIDE,
OR CORRECT SENTENCE UNDER TITLE 28, UNITED STATES CODE, SECTION 2255

      This Memorandum, in support of the instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, is submitted by the Petitioner, Damon Landor, (hereinafter, the defendant), pro se, in the above-numbered and captioned cause, and reflects his sincere belief that he was the victim of a violation of his constitutional right to a fair trial and due process of law both by virtue of the woefully ineffective assistance that he received from his attorney of record who failed to be a reasonable advocate when the defendant was faced with a clearly bad-faith guilty plea agreement and/or procedure committed by the Respondent, United States of America, (hereinafter, the government), and the court.

AUTHORIZATION FOR SUBMISSION OF ACTION UNDER 28 U.S.C. § 2255

      The defendant states that pursuant to United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 21 L.Ed.2d 816 (1982), this action is being lawfully and timely filed and cannot be procedurally barred in that: (a) it is being submitted within one year from the date in which his sentence became final as required by the provisions found in the Anti-Terrorism and Effective Death Penalty Act of 1996; (b) the issues that

-2-

are contained in this action have never before been raised by the defendant in any prior motion or action; (c) the failure of the defendant to raise the issues contained in this action under any prior motion or venue is not due to any culpable negligence or design on his part but, rather, was predicated upon the ineffective assistance that the defendant received from his attorney of record, and; (d) his counsel's ineffectiveness served to prejudice the defendant in his efforts to obtain a fair trial and/or due process in this case which was only recently discovered by the defendant after the instant criminal proceeding as a direct result of his due diligence.

The defendant further states that pursuant to Haines v. Kerner, 404 U.S. 519 (1972), and it's progeny, this court must liberally construe the factors and contentions raised in this action as he is a layman and, as such, is not well-versed in all of the intricacies of federal legal procedure and practice. The defendant also states that it is his prayerful hope that this court overlook any minor procedural inadequacies found herein and view this action with a tolerant eye toward his pro se status, as well as his good-faith intent to comply with any and all rules. See: Camp v. United States, 352 F.2d 800 (5th Cir. 1965).

-3-

## REQUEST FOR EVIDENTIARY HEARING

The defendant respectfully requests that, should this court be unable to reach a conclusive determination as to the merits of the stated claims for collateral relief after consideration of the record of the case, as well as the attendant pleadings, this court order that an evidentiary hearing be held and that the defendant be present for any such hearing with respect to any and all controverted issues, most notably, the issue of ineffective attorney assistance. See: Fontaine v. United States, 411 U.S. 213, 93 S.Ct. 1461, 36 L.ed.2d 169 (1973). See Also: United States v. Briggs, 939 F.2d 222 (5th Cir. 1991); Sosa v. United States, 550 F.2d 244 (5th Cir. 1977), and; Parsons v. United States, 404 F.2d 888 (5th Cir. 1968).

## REQUEST FOR APPOINTMENT OF COUNSEL

The defendant requests that, should this court order that an evidentiary hearing be held, he be appointed competent counsel to assist and represent him in any and all further matters and that this court order that any such appointment of counsel be done absent the defendant having to prepay any fees or costs in recognition of the defendant's pro se status, as well as his affidavit of indigency attested to by the attached Application To Proceed In Forma Pauperis. See: Vandernades v. United States, 53 F.2d 1220 (5th Cir. 1975) and Fleming v. United States, 367 F.2d 555 (5th Cir. 1966).

−4−

## JURISDICTION

This instant request for collateral relief stems from an alleged criminal activity which took place after 1 November 1987.  As such, this is a post-guidelines case and jurisdiction is invoked pursuant to the Consolidated Crime Control Act of 1984; the Sentencing Reform Act of 1984 and, as this is an allegation of drug trafficking violations, the Federal Controlled Substances Act.

Codified jurisdiction is invoked pursuant to Title 28, United States Code, Section 2255; Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), 841 (b)(1)(C), 843(b), 846 and 851, and; Title 18, United States Code, Sections 3231, 3553 and 3742.

Jurisdiction is further invoked pursuant to Rules 11 and 32 of the Federal Rules Of Criminal procedure, as well as any and all applicable Chapters and Sections of the United States Sentencing Guidelines.

Jurisdiction is finally invoked pursuant to the 5th and 6th Amendments to the United States Constitution, as well as any and all other laws, rules, regulations, policies, procedures and legal case precedents, (whether or not actually stated), that are now in force and effect or which were at any time in full force and effect during this entire criminal matter from which such jurisdiction could lawfully have been so invoked.

-5-

## PROCEDURAL HISTORY

On or about 13 November 2003, the defendant was named in two counts of an eleven (11) count true bill of indictment returned by the Grand Jury for the Eastern District of Louisiana, sitting at New Orleans. Specifically, the defendant was charged in Count 1 with violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C) and 846, to wit: conspiracy to distribute and to possess with intent to distribute unspecified quantities of cocaine hydrochloride and cocaine base (crack). The defendant was also charged in Count 3 of violating 21 U.S.C. § 843(b), to wit: use of a communication facility (telephone) during the commission of the aforestated drug trafficking conspiracy. The defendant initially entered a not-guilty plea as to both charged counts. Because of his indigency the court appointed Mr. Dane S. Ciolino, to represent the defendant in this case.

On or about 26 February 2004, the government and the defendant entered into an agreement whereby the defendant elected to forego trial on the instant criminal indictment and plead guilty to a superseding bill of information which charged him with conspiracy to possess with intent to distribute more than 500 grams but less than 5 kilograms of cocaine hydrochloride, in violation of 21 U.S.C. § 841(b)(1)(B) and 846. The defendant also agreed to accept a superseding bill of enhancement pursuant to 21 U.S.C. § 851(a)(1).

On or about 31 March 2004, the defendant appeared before the Honorable Stanwood R. Duval, Jr., United States District Judge, and pled guilty to the superseding bill of information. On or about 7 July 2004, the defendant was sentenced to a confinement term of 120 months. There was no appeal taken from the judgment in this case. This instant request for collateral relief follows.

-6-

QUESTION PRESENTED FOR COLLATERAL REVIEW

IS THE DEFENDANT'S CURRENT 120 MONTH SENTENCE UNLAWFUL IN THAT IT WAS
PREDICATED UPON THE WOEFULLY INEFFECTIVE ASSISTANCE THAT THE DEFENDANT
RECEIVED FROM HIS ATTORNEY OF RECORD THE FACTS OF WHICH DEMONSTRATE A
VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL AS
WELL AS DUE PROCESS OF LAW?

Argument In Support:

INTRODUCTION

The defendant states that while, (from a surface perspective), this case

may appear to reveal that his attorney did everything possible to safeguard his

interests, the true facts of this case tell a far different story as it is the con-

tention of the defendant that not only did his counsel fail to provide him with

effective assistance but, the lack of representation by the defendant's counsel of

record, Mr. Dane S. Ciolino, was so egregious as to be tantamount to a total aban-

donment of the defendant and, in actuality, helped exacerbate the circumstances

that inter alia, eventually led to the violation of the defendant's 5th and 6th

Amendment rights in that:

> The defendant was deprived of his constitutional and
> procedural right to due process and a fair trial as a
> result of the clearly intentional and fatally erron-
> eous advice from his counsel with respect to his elec-
> tion to plead guilty and forego a criminal trial.

It is further the contention of the defendant that his counsel was woefully

ineffective in that the nature and circumstances of this case clearly represent a

set of factors which, at a minimum, should have been spotted and/or addressed by any

attorney certified to practice criminal law and that, (whether by neglect or design),

the defendant's attorney failed in this regard.

FACTUAL BASIS

On or about 21 November 2003, the defendant was instructed to report to his

state parole officer purportedly in regard to an unrelated state matter.  Upon his

-7-

arrival, the defendant was informed that he was being detained pending violations
of his parole.  On or about 22 November 2003, the defendant was taken into custody
by federal authorities pursuant to the grand jury's return of the instant indict-
ment alleging the defendant's involvement in a drug trafficking conspiracy.  After
his initial appearance before the United States Magistrate, (as well as a subse-
quent detention hearing where he was ordered detained pending trial), the defendant
first came in contact with his counsel of record, Dane Ciolino.  Subsequent to the
detention hearing, the defendant was visited by his counsel who informed him that
the government had witnesses who would testify that his "role" in the alleged con-
spiracy was to cook cocaine hydrochloride into cocaine base, and that the defendant
should consider taking a ten year plea offer from the government or else whatever
amount of drugs the "top man in the conspiracy" was held accountable for, the defen-
dant would also be held accountable for.  The defendant informed his attorney that
he did not want to plead guilty to the charged offense and wanted to take his case
to trial.  The defendant repeatedly asked his attorney to demonstrate to him how
he could be held accountable for all of the drugs in the conspiracy.  A question
that the defendant's counsel would never answer.

In or around January, 2004, the defendant was scheduled to appear before
the Assistant U.S. Attorney with respect to a potential plea negotiation.  While
the defendant was present for the meeting, his counsel never showed up which promp-
ted the representative from the government to cancel the meeting.  When counsel
finally did appear the defendant adamantly informed him (in very clear terms), that
he would never plead guilty to being held accountable for any amount of cocaine
base and wanted to go to trial.  Counsel informed the defendant to relax and wait
to see what kind of deal could be worked out with the government.  Shortly there-
after, counsel informed the defendant that the government was willing to charge

-8-

him with only 500 grams of cocaine hydrochloride in exchange for his guilty plea.
The defendant informed counsel that he would be willing to plead guilty to that
amount at which time counsel informed the defendant that he would, again, set up
a date with the government to finalize the procedure with respect to the defendant
pleading guilty to a superseding bill of information that charged him with 500
grams of cocaine hydrochloride. On or about 26 February 2004, the defendant was
summoned before the United States Magistrate. Upon his arrival the defendant dis-
covered that, (once again), his counsel was not in attendance however, unlike the
first meeting with the government, the defendant was informed that an attorney
unknown to him would be stepping in for Mr. Ciolino. At this time the magistrate
read to the defendant the charge as listed in the superseding bill of information.
Once the defendant understood that he was being charged with more than 500 grams
but less than 5 kilograms of coaine hydrochloride he became visibly upset and in-
formed the court that he had no intention of signing any agreement to plead to this
charge. The defendant was then taken out of the courtroom and was soon joined by
his "stand-in" attorney who told him that if he was in any way confused about what
was going on not to waive his rights; which is exactly what the defendant intended
to do until he was taken back into the courtroom where he was led to believe that
he had no choice but to agree to the superseding bill of information as charged,
which he did.

The government's corresponding written plea agreement detailed all of the
terms of the "deal." Aside from the drug amount, the agreement called for the dis-
missal of the original indictment at sentencing. The agreement also informed the
defendant, (for the first time), of the intention of the government to move for
enhancement of his sentence pursuant to 21 U.S.C. § 851(a)(1), which called for a
penalty of from 10 years to life imprisonment. The agreement also called for the
defendant to waive all appellate rights, (including any post-conviction proceedings

-9-

under Section 2255, except for a sentence that was in excess of the statutory maximum or, a sentence that constituted an upward departure from the applicable guideline range. [1] After reviewing the written plea agreement the defendant asked his counsel just what the terms of the plea agreement _really_ meant at which time his counsel became completely evasive with respect to the enhancement clause of the agreement and, instead, told the defendant that he could not tell him exactly what he would get at sentencing, however, it was "highly unlikely" that the defendant would receive a sentence greater than 10 years.

On or about 31 March 2004, the defendant appeared with his counsel for his change of plea hearing.  Prior to the court's appearance, the defendant met with his attorney and the prosecution at which time he was informed by the government that it would state for the record it's intent not to file the aforementioned enhancement information.  The defendant was also instructed not to say anything and just follow his counsel's instructions.  Upon the arrival of the judge the defendant entered a guilty plea to the one count superseding bill of information. At that time the government informed the court that the charge was being changed from less than 5 kilograms to less than 2 kilograms.  The government did not say anything regarding it's intention not to file the enhancement information.  When the defendant asked his counsel why the government did not inform the court of the enhancement matter his counsel stated that he would talk to the government and find out what was going on.

---

1/ The defendant states that the utterly bad-faith nature of the government's written plea agreement, (coupled with the woefully ineffective assistance that the defendant received from his attorney of record), renders the terms of that agreement, including the defendant willingness to waive his right to appeal, as well as to collaterally challenge the judgment of conviction and sentence, constitutionally void.  See: Monroe v. United States, 463 F.2d 1032 (5th Cir. 1972).

-10-

In or around June, 2004, the defendant sent an ex parte letter to the court stating his desire to have his attorney removed as the counsel of record for the defense. Specifically, the defendant informed the court that he was not pleased with his counsel's representation because counsel had, inter alia, refused to in any way respond to repeated inquiries concerning whether or not the government intended to keep it's promise not to file an enhancement information in this case which was made to him, (in front of counsel), prior to the 31 March 2004, change of plea hearing. The court immediately responded to the defendant's letter informing him that an inquiry would be made with respect to his concerns. Shortly thereafter the defendant's attorney spoke with him directly and told him that it was too late to do anything about the enhancement because it had already been filed. The defendant expressed his overall displeasure with the way he was being represented.

On or about 7 July 2004, the defendant, with his counsel, appeared for his sentencing hearing at which time the court sentenced him to 120 months confinement. The court further sentenced the defendant to an eight (8) year term of supervised release and pay a $100.00 special assessment. There was no fine imposed, nor was any appeal taken from this judgment. /2

---

2/ Although the defendant's sentencing hearing was held on 7 July 2004, the judgment of conviction and sentence did not become final, as a matter of law, until 13 July 2004, when it was officially filed by the clerk. The court signed the judgment a day earlier on 12 July 2004.

-11-

## INEFFECTIVE ASSISTANCE OF COUNSEL

Part (1) <u>Deficiency And Prejudice</u>:

<u>The Defendant Was Deprived Of His Constitutional And Procedural</u>
<u>Right To Due Process And A Fair Trial As A Result Of The Clearly</u>
<u>Intentional Erroneous Advice From His Counsel With Respect To</u>
<u>His Willingness To Plead Guilty.</u>

The crux of the defendant's argument as to his being the victim of woefully ineffective assistance from his attorney of record lies directly in the circumstances surrounding the defendant's election to forego his constitutional right to a jury trial in favor of a guilty plea process which turned out to be a stark violation of his constitutional right to due process of law.

As heretofore stated, the defendant, (along with nine (9) co-defendants), was named in an eleven (11) count criminal indictment that alleged his involvement in a drug trafficking conspiracy which began at some unspecified point in or around 24 July 2003 and lasted until on or about 13 November 2003, the date of the filing of the indictment. While this criminal indictment alleged that the foundation of the conspiracy was the distribution and the possession with intent to distribute unspecified quantities of cocaine hydrochloride and cocaine base, the instant indictment was unique for two reasons: (1) although alleging a conspiracy that involved at least 10 individuals, there was not one count to the indictment which alleged any specific act of possession and/or distribution of either cocaine hydrochloride or cocaine base, and; (2) all of the 10 counts subsequent to Count 1, (the conspiracy count), charged various defendants with violation of 21 U.S.C. § 843(b), to wit: use of a telephone in the commission of the alleged drug conspiracy. This situation held true for the defendant also as, in addition to the conspiracy count the defendant was charged in Count 3 of the indictment with the Section 843(b) telephone violation. Only the lead defendant, Christian Bickham, was named in each count of the indictment.

-12-

In fact, the unique lack of specificity of this alleged drug conspiracy was no more starkly demonstrated than in the conspiracy count, itself, which, (devoid of any quantity at all of either cocaine base or cocaine hydrochloride), was charged pursuant to the default provision of 21 U.S.C. § 841(b)(1)(C). As such, on the day of the defendant's arrest, (22 November 2003), he was charged with a federal drug trafficking offense that carried no mandatory minimum sentence and a maximum sentencing provision of twenty (20) years. This was the same statutory sentencing scheme which the defendant faced during his first encounter with his attorney, Dane Ciolino and it was also the same statutory sentencing scheme that the defendant faced when his attorney began the littany of lies and deceptions that ultimately led to the defendant's unknowing, involuntary and unintelligent decision to waive his constitutional right to trial, as well as the deprivation of his constitutional and procedure right to due process of law.

In essentially their first meeting the defendant was informed by his counsel that the government had a "witness" who would testify as to the defendant's role in the drug conspiracy and that the defendant should agree to a proposed ten year plea offer from the government or else he would receive a life sentence after he was held accountable for the same amount of drugs as the "top man" of the conspiracy. This initial threat, however, did not deter the defendant who informed his counsel that he wanted to go to trial. Counsel did not cease in his efforts to get the defendant to plead guilty; an effort that was repeatedly rebuffed by the defendant who adamantly refused to entertain any suggestion that he plead guilty to being involved with cocaine base and it was only after counsel pulled yet another deception by informing the defendant that the government had agreed to hold him accountable for only 500 grams of cocaine hydrochloride that the defendant finally relented and agreed to plead guilty. However, what counsel had failed to inform the defendant was that by pleading guilty he was, in fact, giving the government the one thing

that it apparently could not do for itself, that is, establish a drug accounta-
bility.  In addition, counsel failed to inform the defendant that by agreeing to
plead guilty to the superseding bill of information that defendant was, in fact,
pleading guilty to a greater charge than the one returned by the grand jury.
Counsel also failed to inform the defendant that by agreeing to plead guilty to
the superseding bill of information he was also accepting the government's inten-
tion to enhance the sentence to a mandatory 10 years to life imprisonment.  Counsel
finally failed to inform the defendant that by agreeing to the government's plea
offer he was giving up virtually any opportunity to appeal from the final judgment.

None of these things did the defendant know prior to his willingness to
accept the government's plea offer.  And even when the defendant did express some
concern as to what this plea agreement really entailed, counsel misled the defendant
by telling him "not to worry" as he would not receive a sentence greater than ten
(10) years.  However, counsel failed to explain to the defendant how, had he taken
his case to trial, it was highly unlikely that he would have received a sentence
greater than the one he was pleading guilty to and even more likely that any poten-
tial sentence would have been appreciably less than the mandatory minimum ten year
sentence his guilty plea was locking himself into.  In fact, at no time during this
entire process was the defendant ever given a full and accurate picture of his situa-
tion in order for him to make an informed decision as to whether or not he wanted
to waive his constitutional right to a trial by jury and, as such, not only was he
deprived of his right to trial but, his right to due process was also violated as
absent a full and accurate picture of his situation with respect to the charged
offenses the defendant could never have made a knowing, intelligent and voluntary
waiver of his constitutional rights as protected by the 5th Amendment to the United
states constitution and Rule 11 of the Federal Rules Of Criminal Procedure.

-14-

It matters not that, from surface appearances, the guilty plea colloquy looked like textbook Rule 11 procedure.  It only looks textbook when one fails to consider that it was all a ruse perpetrated by both the government and the defendant's counsel of record.  The district court, along with the defendant, served as unwitting pawns of this great deception.  However, it was the defendant who ultimately paid the heaviest price as he was the victim of a bad-faith plea agreement orchestrated by the government and, whether by neglect or design, exacerbated by the defendant's attorney of record.

## DISCUSSION

Dane Ciolino represented the defendant during each and every stage of this criminal proceeding subsequent to the defendant's indictment and arrest.  Ciolino was fully aware of the charges alleged in the instant indictment, as well as the range of punishment those charges carried.  As such, there can be no other reason or explanation but that Ciolino knowingly and intentionally deceived the defendant when he told him that if he did not agree to take the government's ten year plea offer, he would be looking at a potential life sentence.  The facts of this case, (as contended by the defendant in this action), clearly demonstrator that it was always the desire and intent of the defendant to go to trial with respect to the charges against him as to counts one and three of the indictment and, (although unknown to him at the time), that was a wise decision on the part of the defendant as, (if the conspicuous lack of specificity in the indictment was any indication), the government appeared to be headed for a high degree of difficulty in successfully prosecuting this case.  There was simply no need for the defendant to forego his constitutional right to a jury trial as, from a purely adversarial standpoint, the defense was, win or lose, seemingly in a very good position.  Thus, it was, by far, extremely more favorable to the government to reach a pretrial plea agreement than it was for the defendant and his counsel simply had to know this fact from the very

-15-

beginning.  Which makes it all the more disturbing for the defendant's counsel to advise him to take a offer of ten years when the facts of this case demonstrated that this was an excellent case in which to compel the government to satisfy it's constitutionally mandated burden of proof as, even if the defendant happened not to prevail at trial his potential sentence would probably be far less than the ten years the government was offering.  The actions of the defendant's counsel of record become even more telling when one considers the torrent of lies and deceptions that were leveled at the defendant by his attorney all in an effort to convince the defendant to forego his right to trail.  This is especially true when one further considers that, from the start, the government's plea negotiations were never in good faith and, fact, were seemingly aimed at obtaining through the back door what it apparently could not obtain through the front.  The defendant was literally tricked into not only foregoing his right to trial but also, into pleading guilty to an offense that was greater than the offense he was originally charged.  The defendant finally states that, prior to his willingness to plead guilty to the superseding bill of information, he had never known, (nor was he never informed), of any intent on the part of the government to enhance his potential sentence with respect to his prior convictions.  However, even if such a enhancement was comtemplated by the government and told to the defendant prior to any plea negotiations, (a fact which the defendant's argument certainly does not concede), his unintelligent and involuntary decision to plead guilty also compelled him to agree to the enhancement provision which changed his exposure from no mandatory minimum and a maximum of thirty years under 21 U.S.C. § 841 (b)(1)(C), to a mandatory ten year minimum sentence up to a maximum life sentence under 21 U.S.C. § 841(b)(1)(B).  As well as to change his potential period of mandatory special supervision from three (3) years to a term

-16-

of eight (8) years.   /3

---

3/ The defendant would also respectfully state that there would appear to be some indication that the government's Section 851(a)(1) enhancement information may <u>not</u> had been filed prior to the defendant's change of plea hearing.  It would seem to be clear that the government had not filed the enhancement information prior to the drafting of the 26 February 2004 plea agreement as that document reveals the <u>intent</u> of the government to file the enhancement information.  And all though the record indicates that the defendant and his counsel signed a written plea agreement on 31 March 2004, (presumably the same date as the defendant's guilty plea hearing), the plea agreement governing this case was not filed until 7 April 2004, or one full week <u>after</u> the change of plea hearing and there is nothing in the record that demonstrates that the enhancement provision was filed <u>prior</u> to the defendant's guilty plea hearing which, if this was the case, makes the enhancement information untimely.  Therefore, while not actually making this issue a claim in support of the instant action for collateral relief, the defendant does make note of this potential issue in controversy both for the court's information, as well as to establish this argument for the record should find in the defendant's favor as to his request for collateral relief and set this case to trial as to the original indictment.

-17-

As such, it is the contention of the defendant that he has demonstrated the unconstitutionality of his guilty which clearly tendered in bad faith by the government in that it called for the defendant to plead to an offense greater than the one he was originally charged by the grand jury of committing, as well as to a sentencing exposure that was exceedingly more onerous than even the "worst-case-scenario" with respect to the offense charged by the grand jury, all absent any clear indication that the government could have satisfied it's burden of proof as to the offense charged in the instant indictment. It is further the contention of the defendant that the government's ability to satisfactorily tender this bad faith agreement was made possible by the defendant's counsel of record who, through a series of lies and deceptions, clearly and intentionally misinformed the defendant as to the circumstances surrounding his alleged criminal offense, his ultimate sentencing exposure, the government's intent to enhance his sentence, and the lack of any substantive proof as to the defendant's involvement in the conspiracy. The defendant's further states that all of this untruth and deception on the part of his counsel clearly establishes that his guilty plea was based upon, as well as induced by, Dane Ciolino's assurances that he would only be held accountable for five hundred grams of cocaine hydrochloride which not only was, in and of itself, a deception but also does nothing to inform the defendant of all of the consequences that were to come his way as a result of a fateful decision. Thus the defendant finally states that his guilty plea was neither voluntary nor intelligent and was the product of advise and/or representation that constituted a violation of the defendant's Sixth Amendment right to the effective assistance of counsel.

-17-

Part (2) <u>Standard Of Review</u>:

<u>Guilty Plea Proceedings/Challenges</u>

When a defendant pleads guilty and that plea is accepted and the court

finds no constitutional and/or procedural basis not to find that the guilty plea

was entered both voluntarily and intelligently, the only claims that are cognizable

in a subsequent collateral proceeding are those which allege that either the plea

was not made "voluntarily and intelligently," or was entered into as a consequence

of the "ineffective assistance of counsel." Normally, commonly, a district court

will not disturb a judgment of conviction and sentence with respect to a guilty

plea proceeding on collateral review unless the moving party demonstrates one or

both of the foregoing factors, either which constitutes a virtually insurmountable

burden, and the appellate court will rarely reverse a district court's findings

denying post conviction relief absent a showing of clear error. <u>See</u>: <u>Brady v.</u>

<u>United States</u>, 397 U.S. 742 (1970), "Guilty pleas are valid if made voluntarily,

knowingly and intelligently..." However, in <u>Machibroda v. United States</u>, 368 U.S.

487, the Supreme Court made it clear that a guilty plea, if induced by promises or

threats which deprive it of a voluntary act is void and conviction based upon such

a plea is open to collateral attack." In the instant case the factors and conten-

tions raised by the defendant certainly demonstrate a preponderance as to the claim

of ineffective attorney assistance, as well as his claim that his waiver of his

constitutional right to trial was both involuntary and unintelligent. Thus, the

defendant has clearly established his <u>prima facie</u> claim as to the deprivation of

his 5th and 6th Amendment rights. <u>See Also</u>: <u>United States v. Deal</u>, 678 F.2d 1062

(11th Cir. 1982), in which the court stated "since a guilty plea is also a waiver

of constitutional rights, it not only must be voluntary, but must be a knowing and

intelligent act done with sufficient awareness of relevant circumstances and likely

consequences."

-18-

## Ineffective Attorney Assistance

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court settled, once and for all, the standard for satisfaction of a claim of ineffective attorney assistance. As an opening salvo, the court reiterated it's long held opinion first brought to light in Powell v. Alabama, 287 U.S. 45 (1932), "that a person who happens to be a lawyer is present at trial alongside the accused is not, in and of itself, sufficient to satisfy the Sixth Amendment guarantee." See Also: United States v. Wade, 388 U.S. 218 (1967), "A criminal defendant requires the guiding hand of counsel at all stages of the criminal proceedings against him." The court left no doubt as to what this opinion premised when it stated that the 6th Amendment right to counsel is the right to the "effective assistance of counsel." As such, this watershed opinion established that in order to satisfy a claim of ineffectiveness a defendant must establish that counsel's representation fell below an "objective standard of reasonableness." In invoking this standard the court did not require that a defendant receive "perfect" representation from his counsel. However, the court stated that "the benchmark for judging any claim as to attorney ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." In order to satisfy this stringent test the court devised a two-pronged analysis. The first part of this analysis requires the defendant to show that counsel's performance was deficient so as to demonstrate that the counsel at issue was not functioning as the counsel that is guaranteed the defendant by the Sixth Amendment. The second part of the two-pronged analysis requires the defendant to show that counsel's deficient performance prejudiced the defense so as to show that counsel's deficient errors were so serious as to deprive the defendant of a fair trial, a trial whose result was reliable." Id.

-19-

In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court held that the two part standard adopted in the Strickland opinion for evaluating claims of ineffective assistance of counsel also applied to guilty plea challenges based upon such a claim. With the Strickland principles as it's guide, the Hill court stated that in order to establish a claim of attorney ineffectiveness, the defendant, (as in Strickland, supra), must demonstrate first of all that his counsel's representation fell below and "objective standard of reasonableness," and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." However, in a guilty plea challenge, the defendant must secondly, and most importantly, demonstrate that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. 474 U.S. at 59. As in Hill, supra, the defendant has clearly demonstrated both Strickland requirements in this case. As for the deficientcy requirement, there can reasonably be no dispute that attorney Dane Ciolino systematic series of lies, half-truths and deceptions to the defendant with respect to, his potential outlook by taking this case to trial, as well as to fully and truthfully advise the defendant as to the clearly bad-faith nature of the plea offer, as well as to the fact that the defendant was actually pleading guilty to a charge that was greater and carried a far more stringent punishment exposure than the charges he had received from the grand jury in the original indictment, certainly fell well below any "objective standard of reasonableness." Inducing the defendant to plead guilty by counsel's willful and intentionally erroneous lies and deceptions is ineffective assistance of counsel. See: Finch v. Vaughn, 67 F.3d 909 (11th Cir. 1955, in which the court found that a defendant was entitled to rely on the explanations regarding his decision to plead guilty from legal authorities such as his attorney. Id. 67 F.3d at 916

-20-

(emphasis added), and in this case, "the attorney's erroneous advice constituted ineffective assistance of counsel." Id. 67 F.3d at 917. See: United States v. Scott, 675 F.2d 623 (5th Cir. 1980), ¶A conviction on a guilty plea that is entered solely as a result of faulty advice is a miscarriage of justice." Secondly, the defendant satisfied the prejudice requirement by demonstrating, in this action, he would never have pleaded guilty but for his counsel's advice but, instead, would have gone to trial.  This sentiment from the defendant is not just a self-serving diatribe made in the hindsight of a collateral setting but, in actuality, is clearly corroborated by the true facts of this case which reveal that the conspicuous lack of specificity in the indictment can reasonably be inferred to demonstrate the apparent shortage of evidence from the government as to the amount and/or nature of the cocaine alleged to have been the underlying impetus of the drug trafficking conspiracy.  There simply is nothing in this case which indicates that the defendant had any reason to abnormally fear going to trial on this charge and certainly not to have felt compelled to plead guilty to an offense that carried with it a sentencing range of from 10 years to life imprisonment.  In fact, the factors and contentions in this action demonstrate that, even in the face of his counsel's willful and intentionally erroneous predictions that the defendant would receive a life sentence if he refused the ten year plea offer, the defendant, adamantly and steadfastly refused to entertain any discussion as to a guilty plea and informed his attorney of his desire to take his case to trial.

-21-

## CONCLUSION

In <u>United States v. Cronic</u>, 466 U.S. 608 (1984), the Supreme Court recog-
nized that the adversarial process protected by the Sixth Amendment requires that
the accused have counsel acting in the role of an advocate and the right to the
effective assistance of counsel is thus the right of the accused to require that
the prosecution's case survive the crucible of meaningful adversarial testing.  The
court in <u>Cronic</u>, would go on to state that "the presumption that counsel's assistance
is essential requires the conclusion that the trial (or proceeding) is unfair if
the accused is denied counsel 'at a crucial stage' of his trial; Similarly, if
counsel entirely fails to subject the prosecutor's case to meaningful adversarial
testing then there has been a denial of the Sixth Amendment right that makes the
adversarial process, itself, presumably unreliable." <u>Id</u>. 80 L.Ed.2d at 660.

To conclude then, it is not only the letter and spirit of both law and
procedure that is in question in this case, but also the fundamental issue of fair
play which cries out for attention as, at no time subsequent to the return of the
instant indictment, the defendant's arrest and initial meeting with his counsel,
was the defendant ever on a reasonably equal adversarial footing with the government.
In fact, it could be easily argued that after meeting his counsel, there was never
any doubt as to what the eventual outcome of this case would be as the onslaught of
lies and deceptions from his attorney left the defendant with only one option, which
was to enter a guilty plea.  It does not matter whether or not the defendant could
have prevailed had counsel followed his wishes and taken the defendant's case to
trial.  What does matter is that the defendant was never fully or correctly informed
as to all of the dangers that befell him by agreeing to accept the government's
totally bad faith plea offer, nor did the defendant enjoy even so much as a reason-
able attempt from his counsel to, at least, secure a more favorable sentencing out-
come in the face of all that he was advising his client to give up.  In <u>Cronic</u>,

-22-

the court stated that the "right to effective assistance of counsel is recognized not for it's <u>own</u> sake, but because of the effect it has on the ability of the accused to receive a fair trial and absent some effect of challenged conduct on the reliability of the trial process the Sixth Amendment guarantee is generally <u>not</u> implicated." <u>Id</u>. 90 L.Ed.2d at 659.

If the terms "due process," "fair trial," and most importantly, "effective assistance of counsel" are to have any substantive meaning whatsoever, it should certainly be in this case as the circumstances demonstrate a situation that was so "extraordinary," "exceptional" and patentedly "unfair" that the defendant was in desperate need of a loyal advocate. However, those circumstances also demonstrate how, at no time during this criminal procedure did the defendant ever reasonably enjoy the effective representation from his attorney of record which, as the Supreme Court so clearly opined in <u>Cronic</u>, violated the defendant's Sixth Amendment right. "Of all the rights that an accused person has, the right to be represented by counsel is, by far, the most pervasive for it effects his ability to assert any other rights that he may have." <u>Id</u>. <u>Cronic</u>, <u>supra</u>, 80 L.Ed.2d at 664, 466 U.S. at 654.[4]

---

4/ <u>See</u>: <u>William v. Beto</u>, 354 F.2d 698 (5th Cir. 1965), "Generally relief from a final conviction on a ground of incompetent or ineffective counsel will be granted only where petitioner can demonstrate where the proceeding was a farce... or where purproted representation was only perfunctory, in bad faith, a sham, or a pretense that violated the petitioner's fundmental rights." <u>See Also</u>: <u>Thundershed v. Solem</u>, 565 F.2d 1018 (5th Cir. 1977)

-23-

## RELIEF REQUESTED

WHEREFORE, premises considered, it is the prayerful and respectful request of the defendant that this Honorable Court, find in his favor and in so doing, vacate the current judgement and sentence, allow the defendant to withdraw his guilty plea as to the one count superseding bill of information and set this case for trial on the initial indictment, as well as order any and all other relief, (whether or not requested herein), which this court deems is just and proper under the circumstances and in the current law and procedure.

Respectfully submitted,

Dated: 12/2/04

Damon Landor
Defendant/Petitioner, pro se

## CERTIFICATE OF SERVICE

I, Damon Landor, do hereby CERTIFY that I am the Defendant/Petitioner, in the foregoing action and on this 2ND day of DECEMBER, in the year 2004, I have placed one (1) true photocopy of this action, (to include any and all attachments), in the United States Mail, postage prepaid, for delivery to the following individual and/or agency as PROOF OF SERVICE, thereof:

Office Of The U.S. Attorney
Eastern District Of Louisiana
Hale Boggs Federal Building
500 Poydras Street, Second Floor
New Orleans, Louisiana 70130

Damon Landor
Reg No. 28711-034
Federal Correctional Complex-Medium
Post Office Box 26040
Beaumont, Texas 77720-6040
    Defendant/Petitioner, pro se