

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 MAY 16  PM 3: 44

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                     CRIMINAL ACTION

versus                                       NUMBER 03-355

DAMON LANDOR                                 SECTION: "K"

## GOVERNMENT'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION FOR POST-CONVICTION
## RELIEF PURSUANT TO 28 U.S.C. § 2255

The United States of America, through the undersigned Assistant United States Attorney,

hereby opposes Damon Landor's ("Landor")  motion under 28 U.S.C. § 2255 to vacate, set aside,

or correct sentence by a person in federal custody.  (Rec. Doc. No. 365).  The defendant's motion

is barred by the post-conviction proceedings waiver contained in the plea agreement.  Further, the

defendant has not established that his guilty plea was involuntary or without knowledge or that his

counsel was constitutionally ineffective.  Accordingly, the government respectfully requests that

Landor's § 2255 motion be denied without an evidentiary hearing.[1]

---

[1]Landor has also requested appointment of counsel. "The Supreme Court . . . has made it clear that a convicted defendant has no Sixth Amendment right to counsel in post-conviction habeas proceedings." Irving v. Hargett, 59 F.3d 23, 26 (5th Cir. 1995)(citing Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987)); Callins v. Johnson, 89 F.3d 210, 212 (5th Cir. 1996). "[A] petitioner serving a noncapital sentence has no right to appointment of counsel in a habeas proceeding." Ortloff v. Fleming, 88 Fed. Appx. 715, 2004 WL 298595 (5th Cir. 2004)(citing McFarland v. Scott, 512 U.S. 849, 857 n. 3, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994)).  Landor has no right to counsel in these proceedings and, for the reasons stated herein, his claim is

___ Fee _____
___ /Process _____
_X/ Dktd _____
___ CtRmDep _____
___ Doc. No. _____

## Statement of Facts and Procedural History

On November 12, 2003, the grand jury returned an eleven count indictment charging defendant, Landor, and ten co-defendants with violations of the Controlled Substances Act. (Rec. Doc. No. 1). Landor and his ten co-defendants were charged in count one with conspiracy to distribute and to possess with intent to distribute an unspecified quantity of cocaine and cocaine base (crack), in violation of 21 U.S.C. § 841(b)(1)(c) and 846. (Rec. Doc. No. 1). Landor was also charged in count three with use of a communication facility to commit, cause, and facilitate the conspiracy to distribute and to possess with intent to distribute an unspecified quantity of crack.

On February 9, 2004, a bill of information was filed pursuant to 21 U.S.C. §§ 851(a) and 841, to establish that on April 16, 1998, Landor was convicted of distribution of cocaine, a felony, in the 22nd Judicial District Court of St. Tammany Parish, Louisiana. (Rec. Doc. No. 105). Landor also has state felony convictions for possession of cocaine and distribution of an imitation or counterfeit controlled dangerous substance, falsely representing it to be a controlled substance, but these were not charged in the bill of information.

On March 22, 2004, a one count superseding bill of information was filed against Landor charging him with conspiracy to distribute and to possess with intent to distribute more than five hundred grams, but less than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Rec. Doc. No. 155).

On March 31, 2004, pursuant to a plea agreement signed by him, defense counsel, and government counsel, Landor entered a plea of guilty to the one count superseding bill of

---

meritless. His request for appointment of counsel should be denied.

information.[2]  During his rearraignment proceeding, this Court specifically informed Landor and

the co-defendants who plead guilty in the same proceeding of the charges against them to which they

were pleading guilty, the elements of the offenses, and the applicable maximum penalties and

mandatory minimum penalties, as well as the effect of the 851 bill of information on the mandatory

minimum penalties.[3]

In the factual basis for the guilty plea, which was signed by the defendant  and his counsel,

Landor agreed that if the matter went to trial, evidence would be presented which would establish

that during the time frame stated in the indictment and bill of information, he distributed cocaine to

or received cocaine from the individuals charged in count one of the indictment. (Exh. E, pp. 1-2).

The factual basis also indicated that the quantity of cocaine included a total of more than 500 grams,

but less than two kilograms.  (Exh. E, p. 2).  During the rearraignment, after the factual basis was

read by government counsel to the defendant, Landor and his defense counsel confirmed that they

_____

[2]The following documents are attached as exhibits: (1) Exh. A, indictment and superseding bill of
information;  (2) Exh. B, 851 bill of information ; (3) Exh. C, Rearraignment transcript; (4) Exh. D, plea agreement;
(5) Exh. E,  factual basis; (6) Exh. F,  Sentencing Transcript; (7) Exh. G, Court's May 19, 2004, Minute Entry and
attached letter (Rec. Doc. No. 202); and (8) Exh. H, Ciolino's June 14, 2004, Letter in response to Court's Minute
Entry.

[3]More particularly, during the plea colloquy, the Court informed Landor and his co-defendants:
You are each charged in the single count bill of information with
conspiracy to distribute and to possess with intent to distribute more than 500
grams, but less than five kilograms of cocaine hydrochloride.  The maximum
possible sentence that can be imposed on you in the event of that conviction of
that charge, either upon a plea of guilty or after a trial at which you're found
guilty[,] is imprisonment for a mandatory minimum of five years, up to a
maximum penalty of 40 years. . . .
Now, **Messrs.  Landor** and Bullock, **a section 851 (a)(1) bill of
information under Title 21 of the United States Code has been filed as to
your prior criminal convictions; therefore, the mandatory minimum
sentence in your case is increased to ten years with a maximum sentence of
life and a fine of $ 4 million.**
The Court then inquired of the defendant whether he understood the  maximum penalties which could be
imposed, to which Landor replied, "Yes, Sir." (Exh. C, pp. 16-17) (emphasis added).
At a later point during the rearraignment, the Court asked Landor a second time whether he understood that
he faced a statutory minimum sentence of ten years, and Landor again agreed that he understood.  (Exh. C, p. 21).

3

had reviewed the factual basis to their satisfaction and that they read it.  (Exh. C, pp. 44-45).

During the plea colloquy, Landor and defense counsel confirmed that they read, understood, discussed, and signed the plea agreement.  (Exh. C, pp. 27-32).  In plain terms, the plea agreement states the mandatory minimum sentence, the maximum possible sentence, and the effect of the 851(a)(1) bill of information on the defendant's possible sentence, as well as the government's agreement to file only a single count 851(a)(1) bill of information and to charge quantities of more than 500 grams but less than 5 kilograms of cocaine hydrochloride in the superseding bill of information, as follows:

> Mr. Landor has agreed to plead guilty to one count of a Superceding Bill of Information relative to a Conspiracy to possess with intent to distribute of more than 500 grams but less than 5 kilograms of cocaine hydrochloride in violation of Title 21, United States Code, Section 841(b)(1)(B) and 846.
>
> In exchange for this plea, the Government agrees to dismiss the original Indictment against Mr. Landor at the time of sentencing. In exchange for this plea, the Government agrees to dismiss Counts 1 and 3 of the Indictment at the time of sentencing.  **Also, the Government will file only a single Bill of Information pursuant to Title 21, United States Code, Section 851(a)(1).**  The defendant understands that the Court is not bound to accept the plea agreement. The defendant further understands that pursuant to 851(a)(1), he faces a minimum of five (5) years imprisonment up to forty (40) years imprisonment and/or a fine of $ 2,000,000.  **However, since the 851(a)(1) bill of information is filed, the mandatory minimum sentence is increased to ten (10) up to a maximum sentence of life imprisonment and/or a fine of $ 4,000,000.**

(Exh. C, p. 1) (emphasis added).

The plea agreement contains the following appellate and post-conviction proceeding waiver provision:

> Except as otherwise provided in this paragraph, the defendant hereby

4

expressly waives the right to appeal his sentence on any ground, including but not limited to any appeal right conferred by Title 18, United States Code, Section 3742 on the defendant, and **the defendant further agrees not to contest his sentence in any post-conviction proceeding, including but not limited to a proceeding under Title 28, United States Code, Section 2255.** The defendant, however, reserves his right to appeal the following: (a) any punishment imposed in excess of the statutory maximum, and (b) any punishment to the extent it constitutes an upward departure from the Guideline range deemed most applicable by the sentencing court.

Exh. D (emphasis added).    As part of the plea colloquy, this Court explained the appeal and collateral challenge waiver of the plea agreement and examined Landor with respect to whether he understood the waiver, to which he assented. (Exh. C, pp. 19-20).

Finally, at the conclusion of the proceedings, the Court inquired of Landor whether he understood the charge against him, whether he was pleading guilty because he was in fact guilty, and whether he was pleading guilty voluntarily and of his own free will, and whether, after listening the entire proceedings which outlined the entirety of the maximum and mandatory minimum penalties, his rights, the plea agreement, and the factual basis underlying his charge, he still wanted to plead guilty. Landor indicated that he still wanted to plead guilty. (Exh. C, pp. 49-51).

On May 19, 2004, after he entered his guilty plea and prior to sentencing, the Court received a letter from Landor stating in pertinent part that:

> I am writing in concern of my plea agreement. On March 31, 2004, I was under the impression that I was pleading guilty to more than 500 grams but less than 2 Kilograms of cocaine hydrochloride, and that I will not be billed under any circumstances and have my parole for the state run concurrent with my new charge. My Attorney Dane S. Ciolino stated all of this information the day of my plea agreement and that this information would be on the recored [sic]. That was the reason I didn't say nothing at court, cause my Attorney said everything was going to be alright. So after I read my plea agreement I saw 851[(a)(1)] which means a single bill was file, and I had No Knowledge until I look up 851(a)(1) in the law book. . . . .  Your honor I'm guilty of my charge and God Knows I'm not going to trail

5

> [sic]. I'm Just tryin [sic] to plea out [sic], without the bill. I would
> like to file an objection to the Title 21, USC Section 851(a)(1) single
> bill.

(Exh. G). The Court filed the letter into the record and asked for counsel's position with respect to

whether this letter affected Landor's guilty plea. (Rec. Doc. 202).

On June 14, 2004, Landor's counsel, Dane Ciolino, responded to the Court as follows:

> On May 21, 2004, I received a copy of a letter that Mr. Landor
> wrote to you complaining about various matters. I thereafter wrote to
> Mr. Landor and have the following to report.

> Mr. Landor contended in his letter that I promised him that he
> would 'not be billed under any circumstances.' At the time of his
> plea, Mr. Landor had *already been billed* as a multiple offender for
> a single prior conviction. Both AUSA Duane Evans and I informed
> him that if he pled guilty, the government would refrain from billing
> him with any *additional* prior convictions. Furthermore, at the time
> of Mr. Landor's guilty plea, Mr. Evans and I told him that he would
> likely receive a statutory mandatory minimum sentence of 10 years.
> In any event, although Mr. Landor may object to a Guidelines
> computation using the multiple bill, he has informed me that he does
> not wish to seek to withdraw his guilty plea.[4]

(Exh. H)(emphasis added). Landor did not file a motion to withdraw his guilty plea, nor did he send

any more letters to the Court.

The Presentence Investigation Report ("PSR") notes that there is a mandatory minimum term

of imprisonment of ten years. (PSR, para. 112). It also notes that based "on a total offense level

of 23 and a criminal history category of VI, the guideline range for imprisonment is 92 to 115

months. Per U.S.S.G. § 5G1.1(b), where the statutorily required minimum is greater than the

maximum of the applicable guideline range, the statutorily required minimum becomes the guideline

range." (PSR, par. 113). The Supplemental Addendum to the PSI notes that there were no

---

[4]A copy of Ciolino's June 14, 2004, letter from Ciolino to the Court was also sent to Landor.

objections to the PSR.

At his July 4, 2004, sentencing proceeding, defense counsel informed the Court that although he had previously spoken to him and the defendant had indicated that he had no objections to the PSI, Landor had raised the following issues that morning. First, defense counsel stated that while Landor objected to receiving a criminal history point for a conviction that he claimed did not occur, Ciolino advised the Court that he reviewed certified copies of the judgment and conviction which would eliminate any good faith basis for challenging it. (Exh. F, pp. 2-3). Ciolino also advised the Court that Landor objected to receiving three criminal history points for two convictions which occurred on the same date, but defense counsel also admitted that under the guidelines, the computation was correct because the convictions were as the result of two separate arrests. (Exh. F, p. 4). The Court overruled the objections because the guideline calculation was done correctly and because the computation of criminal history points did not affect Landor's sentence as "Congress has imposed a statutory minimum, which exceeds the guideline range." (Exh. F, p. 6). At Landor's request, defense counsel also noted that, "Mr. Landor asked . . . about his state court parole and whether this sentence is going to be consecutive to that. I explained to him . . . that this Court is going to impose sentence today. That federal sentence will be executed, and it will not be consecutive to anything [that] happens in state court. However, what happens in state court with a state judge is something that only the state court judge can impose, and you have no authority to rule in that area." The Court responded, "That's correct. Well stated, Mr. Ciolino." (Exh. F, p. 7).

In accordance with the statutory mandatory minimum and the sentencing guidelines, the Court sentenced Landor to 120 months imprisonment and an eight year term of supervised release. (Exh. F, pp. 8-9; Judgment and Commitment Order, Rec. Doc. No. 227). Landor did not file a notice

of appeal.

On December 14, 2004, Landor, who is presently incarcerated in a federal prison, filed the timely instant motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. (Rec. Doc. No. 365)

## Issues Presented

The defendant raises the following issue in his § 2255 motion:

> Ineffective assistance of counsel/invalid guilty plea procedure:
> That the defendant's current 120 month sentence is unlawful in that it is the product of woefully ineffective assistance from his counsel of record; the facts of which demonstrate a violation of the defendant's constitutional right to a fair trial and due process of law, both by virtue of an intentionally bad-faith plea agreement from the government which was exacerbated by counsel's willful and intentionally erroneous advice.

Landor argues that his counsel was constitutionally ineffective in advising him to enter into a plea agreement with the government and plead guilty. He contends that prior to his rearraignment, he was unaware that the government had filed a bill of information to establish his prior conviction which resulted in a mandatory minimum 10 year imprisonment sentence. He argues that his counsel mislead him to believe that he could be held accountable in the drug conspiracy for five kilograms or more of cocaine. He also complaints that his counsel failed to inform him that by entering into the plea agreement, he was waiving his right to challenge his sentence. As a result of his lack of knowledge, he alleges that his guilty plea was invalid.

8

LAW AND ARGUMENT

**A. The defendant agreed to waive his right to appeal his sentence on any ground and agreed not to contest his sentence in any post-conviction proceeding.**

In <u>United States v. Wilkes</u>, 20 F.3d 651 (5th Cir. 1994), the Fifth Circuit held that "an informed and voluntary waiver of post-conviction relief is effective to bar such relief." <u>Id</u>. at 653. The <u>Wilkes</u> court also recognized that "[s]uch a waiver may not always apply to a collateral attack based upon ineffective assistance of counsel." <u>Id</u>. (*citing* <u>United States v. Abarca</u>, 985 F.2d 1012, 1014 (9th Cir. 1993), *cert. denied*, 508 U.S. 979, 113 S.Ct. 2980, 125 L.Ed.2d 677 (1993)). Ineffective assistance of counsel claims survive a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself." <u>United States v. White</u>, 307 F.3d 336, 343 (5th Cir. 2002). If the plea or waiver itself was knowing and voluntary and if the issue raised may properly be the subject of a waiver, "then the guilty plea sustains the conviction and sentence and the waiver can be enforced." <u>Id</u>. at 343-344.

For a plea "[t]o be knowing and intelligent, the defendant must have 'a full understanding of what the plea connotes and of its consequence." <u>United States v. Hernandez</u>, 234 F.3d 252, 255 (5th Cir. 2000) (*citing* <u>Boykin v. Alabama</u>, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). "The defendant need only understand the direct consequences of the plea; he need not be made aware [of] every consequence that, absent a plea of guilty, would not otherwise occur." <u>Hernandez</u>, 234 F.3d at 255 (*citing* <u>Trujillo v. United States</u>, 377 F.2d 266, 266 (5th Cir.), *cert. denied*, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed..2d 221 (1967)). "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the

9

offense charged.  As long as [the defendant] understood the length of the time he might possibly receive, he was fully aware of his plea's consequence." United States v. Pearson, 910 F.2d 221, 223 (5th Cir. 1990) (quoting United States v. Rivera, 898 F.2d 442, 447 (5th Cir. 1990)(quoting Barbee v. Ruth, 678 F.2d 634 (5th Cir. 1982)).  Before the district court accepts a guilty plea, a defendant does not have a right to notice of his guideline calculation.  "Due process does not mandate . . . either notice, advice, or a probable prediction of where, within the statutory range, the guideline sentence will fall."  Pearson, 910 F.2d at 223; Watson, 988 F.2d 544, 553 (5th Cir. 1993).

For a guilty plea to be "voluntary," it must not be induced  by "'actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant' or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.'"  Matthew v. Johnson, 201 F.3d 353, 365 (5th Cir. 2000) (quoting Brady v. United States, 397 U.S. 742, 750, 90 S.Ct. 1463, 25 L.ED.2d 747 (1970)).

For an appellate and collateral challenge waiver to be informed,  "[a] defendant must know that he had a 'right to appeal his sentence and that he was giving up that right.'"  United States v. Portillo, 18 F.3d 290, 292 (5th Cir. 1994) (quoting United States v. Melancon, 972 F.2d 566, 567 (5th Cir. 1992)).  Ineffective assistance of counsel claims are not excepted from such waivers if the waiver was knowing and voluntary.   As observed in White,  "[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about the process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result.  A

knowing and intelligent waiver should not be so easily evaded." 307 F.3d at 344.[5]

As the rearraignment transcript indicates, the Court fully advised Landor of the nature of the charges (Exh. C, pp. 16-17) and the elements which the government was required to prove in order to convict him of the charges (Exh. C, pp. 22-24), the rights he was giving up by pleading guilty (Exh. C, pp. 21-22), and the maximum and mandatory minimum penalties which he faced as a result of those charges and the effect of the 851 bill of information previously filed by the government (Exh. C, pp. 16-17). The Court also explained the appeal and collateral challenge waiver to Landor. (Exh. C, p.19). Upon probing inquiry by the Court, Landor testified that he knew and understood these consequences of his guilty plea. Thus, irrespective of any alleged "misinformation" by his counsel, the record unequivocally demonstrates that the Court fully and accurately advised the defendant of what his guilty plea meant and its consequences.

Landor also contends that his plea was involuntary, but he does not suggest that due to mental or emotional pressures, he was unable to weigh his options regarding the entry of a plea. The record does not contain a shred of evidence to support such a contention. In fact, the entirety of the record demonstrates that Landor exercised control over his decisions. For example, the rearraignment and sentencing transcripts reflect Landor's ability and willingness to raise issues and to ask questions of the Court. Following his rearraignment, Landor addressed a letter directly to the

---

[5]The only avenues of appeal or collateral challenge excepted from the waiver were if the sentence imposed on the defendant was in excess of the statutory maximum or if it constituted an upward departure from the guideline range deemed most applicable by the sentencing court. The maximum sentence which could have been imposed on the defendant was life imprisonment and the statutory minimum, which constituted the guideline range deemed most applicable by the sentencing judge, was 120 months. Since the defendant was sentenced to 120 months, neither of these exceptions are applicable.

Court complaining of a lack of knowledge of the fact that the § 851 bill of information was filed.

The Court took pains to ensure that the plea was voluntary. During the plea colloquy, this Court specifically inquired of Landor and his co-defendants whether they were pleading guilty voluntarily and of their own free will, to which all defendants responded affirmatively. (Exh. C, p. 50). Upon inquiry, all co-defendants likewise denied that they had been "influenced, induced, or persuaded in any manner to plead guilty because of any promises or threats" by anyone. (Exh. C, p. 26). After receipt of the defendant's letter in which raised questions about his knowledge of the filing of the §851 bill prior to his guilty plea, the Court investigated the matter by directing that the parties respond. The response by defense counsel, a copy of which was supplied to the defendant, indicates that while he might object to the guidelines calculation based upon the § 851 bill, Landor did not wish to withdraw his guilty plea.

There is not even a scintilla of evidence in the record which would support a finding that Landor's plea was anything but knowing and voluntary. His statements during the rearraignment proceeding clearly indicated the same to the Court. "Testimony by a defendant in open court at a plea colloquy "carries a strong presumption of verity." United States v. Abreo, 30 F.3d 29, 31 (5th Cir. 1994). Further, "[a] guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands." Daniel v. Cockrell, 283 F.3d 697, 703 (5th Cir. 2002) (citing Spinelli v. Collins, 992 F.2d 559, 561-62 (5th Cir. 1993)).

With respect to enforcement of the collateral challenge waiver, as held in White, the only

ineffective assistance claims which survive the waiver would be ineffective assistance in entering into the plea agreement and in agreeing to the waiver. White, 307 F.3d at 343. Although Landor raises such a claim, the record demonstrates without question that Landor was informed of the waiver by the Court and he agreed to it. Under such circumstances, in accordance with the White decision, Landor's ineffective assistance claim is not excepted from the appellate and collateral challenge waiver in the plea agreement. Landor's motion under 28 U.S.C. § 2255 should be dismissed as he waived his right to seek such relief.

**B.      Landor's guilty plea was knowing and voluntary**.

Landor argues that his guilty plea was not knowingly and voluntarily entered into because defense counsel "through a series of lies and deceptions, clearly and intentionally misinformed the defendant as to the circumstances surrounding his alleged criminal offense, his ultimate sentencing exposure, the government's intent to enhance his sentence, and the lack of any substantive proof as to the defendant's involvement in the conspiracy." For the reasons stated above, Landor's argument with respect to the validity of his guilty plea is totally unsupported in the record because, as the plea colloquy demonstrates, this Court fully advised Landor of his plea's consequences and questioned him in detail to determine whether he understood those consequences and whether he was pleading guilty voluntarily. The rearraignment transcript leaves no doubt that Landor had knowledge of the rights to which he would be entitled had he chosen to proceed to trial, the maximum and mandatory minimum penalties which he faced as a result of his plea, the effect of the § 851 bill on the mandatory minimum sentence, and the facts underlying his guilty plea.

Landor has not demonstrated that his plea lacks any of the characteristics which define a

voluntary and knowledgeable plea.

**C. Landor has failed to demonstrate that he received ineffective assistance of counsel.**

Landor alleges that he received ineffective assistance of counsel when his counsel advised him to plead guilty after a bill of information establishing a prior conviction was filed subjecting him to a mandatory minimum sentence. To prove a valid claim for ineffective assistance of counsel, the petitioner must demonstrate both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To succeed, the petitioner must show: (1) his counsel's performance was deficient , and (2) his counsel's deficient performance prejudiced his defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

A finding of ineffective assistance "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. "The proper standard for judging attorney performance is that of reasonably effective assistance," considering all the circumstances. Strickland, Id. "[T]he Sixth Amendment requires counsel to conduct a reasonably thorough, independent inquiry into the defenses that might be offered in mitigation of punishment." Ladd v. Cockrell, 311 F.3d 349, 358 (5th Cir. 2002) (citing Baldwin v. Maggio, 704 F.2d 1325, 1332-33 (5th Cir.), cert. denied, 467 U.S. 1220, 104 S.Ct. 2669, 81 L.Ed.2d 374 (1984)).

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689, 104

14

S.Ct. at 2065. Accordingly, the Supreme Court instructed courts to "indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound . . . strategy." Id. (citation and internal quotation marks omitted). "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." Green v. Johnson, 116 F.3d 1115, 1112 (5th Cir. 1997)(citing Strickland, 466 U.S. at 689-90, 104 S.Ct. at 2065-66)). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Green, 116 F.3d at 1122 (quoting Garland v. Maggio, 717 F.2d 199, 206 (5th Cir. 1983)(on rehearing)).

In order to establish that counsel's error is prejudicial pursuant to Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2069.

To establish prejudice in guilty plea cases, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). In Armstead v. Scott, 37 F.3d 202, 206 (5th Cir. 1994), the court explained that:

> [A] defendant must 'affirmatively prove' prejudice. Strickland, supra, 466 U.S. at 693, 104 S.Ct. at 2067. A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the Strickland test. A petitioner must establish that but for his counsel's alleged erroneous advice, he would not have pleaded guilty, but

15

> would have insisted upon going to trial. *Carter v. Collins*, 918 F.2d
> 1198, 1200 (5th Cir. 1990).
>
> This assessment, in turn, will depend in part on a prediction of what
> the outcome of a trial might have been. *Hill*, 474 U.S. at 56-58, 106
> S.Ct. at 369-70.

<u>Armstead</u>, 37 F.3d at 206 (emphasis added).

The prejudice inquiry also requires the court to determine "whether counsel's deficient

performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair."

<u>Magnum v. Hargett</u>, 67 F.3d 80, 85 (5th Cir. 1995)(*quoting* <u>Lockhart v. Fretwell</u>, 506U.S. 364, 113

S.Ct. 838, 122 L.Ed.2d 180 (1993)).  The outcome of the trial is not unreliable and the proceeding

is not fundamentally unfair "if the ineffectiveness of counsel does not deprive the defendant of any

substantive or procedural right to which the law entitled him."  <u>Magnum</u>, 67 F.3d at 85 (*quoting*

<u>Fretwell</u>, 113 S.Ct. at 844)).

If the Court finds that the petitioner has made an insufficient showing at either stage of

inquiry, the Court may dispose of the claim.  *See* <u>Strickland</u>, 466 U.S. at 697, 104 S.Ct. at 2069.

Further, if on the record the Court can conclude as a matter of law that the petitioner cannot establish

one element necessary for an ineffective assistance of counsel claim, neither discovery nor an

evidentiary hearing is required.  <u>United States v. Walker</u>, 68 F.3d 931, 934 (5th Cir. 1995).[6]

---

[6] In <u>Walker</u>, the Fifth Circuit dismissed petitioner's motion under 28 U.S.C. § 2255 without an evidentiary hearing, stating that "if on this record we can conclude as a matter of law that Walker cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary and we may affirm." <u>Walker</u>, 68 F.3d at 934 (*citing* <u>United States v. Acklen</u>, 47 F.3d 739, 743-44 (5th Cir. 1995)).
  Discovery under § 2255 is limited, and the petitioner has not satisfied the "good cause" test of Rule 6 of the Rules Governing § 2255 Proceedings. <u>See, e.g.</u>, <u>West v. Johnson</u>, 92 F.3d 1385, 1399-1400 (5th Cir. 1996) (conclusory allegations are not enough to warrant discovery; "the petitioner must set forth specific allegations of fact; Rule 6, which permits the district court to order discovery on good cause shown, does not authorize fishing expeditions") (citation and internal quotation marks omitted); <u>Murphy v. Johnson</u>, 205 F.3d 809, 817 (5th Cir. 2000)

16

Landor has failed to demonstrate that his counsel was deficient, but in fact, quite the opposite. Landor states that his counsel told him he "should consider taking a ten year plea offer from the government or else whatever amount of drugs the 'top man in the conspiracy' was held accountable for, [he] would be held accountable for." Landor's § 2255 memorandum, p. 7. Under §1B1.3 of the United States Sentencing Guidelines, if Landor had proceeded to trial and had been convicted, because he was charged as a conspirator in a drug conspiracy, the calculation of his guidelines would have been determined on the basis not only of his acts and omissions, but also "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." One of Landor's co-defendants and co-conspirators, Christian Bickham, pled guilty to the drug conspiracy and in his factual basis, he admitted distributing between 15 and 50 kilograms of cocaine. (Rec. Doc. No. 132). Bickham also admitted that he distributed, or had knowledge that his cocaine was being converted into, between 150 to 500 grams of cocaine base. Two of his other co-defendants, Ike Laurent, Jr., and Jerome Vince, pled guilty to the drug conspiracy and admitted in the factual bases either distributing or conspiring with others to distribute or to possess with intent to distribute between five and fifteen kilograms of cocaine. (Rec. Doc. Nos. 130, 190). If Landor been convicted at trial of conspiring with Bickham, Laurent, or Vince to distribute or possess with intent to distribute more than five kilograms of cocaine under 21 U.S.C. § 841(a)(1), under USSG §1B1.3,

(permitting discovery or evidentiary hearing on "conclusory and speculative claim" would be "tantamount to a fishing expedition").

the amount of drugs admitted to by his co-defendants, if their acts in furtherance of the conspiracy were reasonably foreseeable, would have been attributable to him. Landor would have been subject to a mandatory minimum prison sentence of 20 years if charged with only one prior felony drug conviction established by the 21 U.S.C. § 851 bill of information. If the government had filed a § 851 bill of information charging him with two prior felony drug convictions and he was convicted under 841(a)(1), he would have been subject to a mandatory life sentence.

Landor also contends that "Ciolino knowingly and intentionally deceived the defendant when he told him that if he did not agree to take the government's ten year plea offer, he would be looking at a potential life sentence." Landor's § 2255 memorandum, p. 14. As stated, a review of the record establishes that if he had not entered the plea agreement and he had gone to trial on the drug conspiracy charges involving five kilograms or more of cocaine and the government had filed a bill of information establishing his two prior felony drug convictions, Landor would have been in jeopardy of a life sentence  The record unquestionably establishes that counsel gave him sound advice which enabled him to avoid the possibility of a life sentence. Landor has utterly failed to show that his counsel was deficient.

In addition, Landor has failed to establish any prejudice as a result of his counsel's advice. During his rearraignment proceeding, Landor expressed no reluctance in entering the guilty plea. When he sent the May 19, 2004, letter to the Court expressing confusion regarding the 851 enhancement, he also added "Your honor I'm guilty of my charge and God knows I'm not going to trail [sic]. I'm just tryin [sic] to plea [sic] out." (Exh. G). When his counsel responded to the letter in accordance with the Court's directions, counsel stated that he had spoken to Landor and reported

18

that "although Mr. Landor may object to a Guidelines computation using the multiple bill, he has informed me that he does not wish to seek to withdraw his guilty plea." (Exh. H). All of Landor's co-defendants either plead guilty, were convicted, or are at large. Considering the totality of the evidence in the record, Landor has not shown that there is any "reasonable probability" that but for his counsel's advice, he would not have pleaded guilty and would have insisted in going to trial. He has failed to adduce any evidence which would undermine confidence in his conviction or failed to suggest any reason why his proceedings were fundamentally unfair.

**CONCLUSION**

Landor knowingly and voluntarily waived his right to collaterally challenge his conviction and sentence pursuant to 28 U.S.C. § 2255 when he entered a valid guilty plea pursuant to his plea agreement with the government. Even if he had not waived his right to file a collateral challenge, his § 2255 motion is meritless. He has failed to demonstrate either that his guilty plea was without knowledge of its consequences, that this counsel's performance was deficient or that he suffered prejudice resulting from such performance.

19

Because petitioner, Landor, is not entitled to relief pursuant to 28 U.S.C. § 2255, the government respectfully requests that this Court deny his § 2255 motion without allowing discovery and without an evidentiary hearing.

Respectfully submitted,

**JIM LETTEN**
**UNITED STATES ATTORNEY**

*Carol L. Michel*

**CAROL L. MICHEL**
Bar Roll No. 14226
Assistant U.S. Attorneys
500 Poydras St., Room 210 B
New Orleans, Louisiana   70130
Telephone: (504) 680-3095

CERTIFICATE OF SERVICE
I certify that a copy of the
foregoing has been served upon
the *pro se* defendant
by mailing the same to him,
properly addressed and postage
prepaid this ___16 th___ day of
_____May_____, 2005
_____Carol K. Michel_____
Assistant United States Attorney

20

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED